IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| HUMBOLDT HEALTHCARE, INC.; | ) | |
| LEXINGTON HEALTHCARE, INC.; | ) | |
| DYERSBURG HEALTHCARE, INC.; | ) | |
| and WHITEHAVEN HEALTHCARE, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | No. 05-1076-T/An |
| | ) | |
| LASALLE BANK NATIONAL | ) | |
| ASSOCIATION, as Trustee for the Holders | ) | |
| of Nomura Asset Securities Corporation, | ) | |
| Commercial Pass-through Certificates, | ) | |
| Series 1994-C3 ("the Trust"), and By and | ) | |
| Through Midland Loan Services, Inc., Its | ) | |
| Servicer, and CRIIMI MAE Services | ) | |
| Limited Partnership, Its Special Servicer; | ) | |
| CRIIMI MAE SERVICES LIMITED | ) | |
| PARTNERSHIP, As Special Servicer for | ) | |
| the Trust; and MIDLAND LOAN | ) | |
| SERVICES, INC., As Servicer for the | ) | |
| Trust, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING MOTIONS TO DISMISS
DENYING MOTIONS TO STRIKE JURY DEMAND
AND
GRANTING MOTION FOR SCHEDULING CONFERENCE

The plaintiffs, Humboldt Healthcare, Inc., Lexington Healthcare, Inc., Dyersburg

Healthcare, Inc. and Whitehaven Healthcare, Inc., filed this action on March 14, 2005 against

defendants CMSLP Management Company, Inc., CRIIMI MAE Services Limited Partnership, LaSalle Bank National Association, Midland Loan Services, Inc., and Nomura Asset Capital Corporation.[1]  The original complaint asserted claims for breach of contract, common law fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, violation of the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 369, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109.

On August 15, 2005, the defendants filed a Motion to Dismiss Complaint and Motion to Strike Plaintiffs' Jury Trial Demand.  On October 3, 2005, plaintiffs responded to the motions, and also filed a first amended complaint.[2]  The first amended complaint clarified that defendant LaSalle Bank National Association ("LaSalle") is sued in its representative capacity as Trustee for the holders of Nomura Asset Securities Corporation, commercial pass-through certificates, series 1994-C3 (the "Trust"), and by and through its servicer, Midland Loan Services, Inc. ("Midland"), and its special servicer, CRIIMI MAE Services Limited Partnership ("CMSLP").  Plaintiffs also sued defendant Midland as servicer for the Trust and defendant CMSLP as special servicer for the Trust.

In the first amended complaint, plaintiffs asserted claims for breach of contract, RICO violations and unjust enrichment; the claims for common law fraud and consumer protection

---

[1] Plaintiffs filed a Notice of Voluntary Dismissal as to Nomura Asset Capital Corporation on July 11, 2005, prior to any defendant filing a response to the Complaint.

[2] Also on October 3, 2005, plaintiffs filed a Notice of Voluntary Dismissal as to CMSLP Management Company, Inc.

act violations were omitted. Defendants filed a Motion to Dismiss First Amended Complaint and Motion to Strike Plaintiffs' Jury Trial Demand on October 28, 2005; plaintiffs responded to the motions on December 16, 2005. On December 27, 2005, plaintiffs filed a motion seeking leave to file a second amended complaint.[3] The motion to amend was granted on March 17, 2006.

The defendants' first motion to dismiss and motion to strike, filed with regard to the original complaint, is DENIED as moot. The arguments raised in those motions have been addressed and cured by the first amended complaint or else have been reiterated by the defendants in their motion to dismiss the first amended complaint.

The second amended complaint clarifies certain of the allegations in the first amended complaint and adds causes of action for violations of the Tennessee usury statute, Tenn. Code Ann. § 47-14-101 *et seq.*, negligence and conversion.

A motion to dismiss under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. Rule 8(a) requires the pleader to set forth a short and plain statement of the claim showing an entitlement to relief. In evaluating a motion to dismiss under Rule 12(b)(6), all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). The complaint need only afford the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Lawler v. Marshall, 898 F.2d

---

[3] The proposed second amended complaint was submitted as an attachment to the motion to amend.

3

1196, 1199 (6th Cir. 1990) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A motion to dismiss under Rule 12(b)(6) is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46)); Allard v. Weitzman (In re Delorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993).  A complaint should not be dismissed because it does not state all the elements giving rise to a legal basis of recovery or because plaintiff misconceived the proper theory or claim if plaintiff is entitled to relief under any theory.  Myers v. United States, 636 F.2d 166, 169 (6th Cir. 1981); Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784 (8th Cir. 1979), *cert. denied*, 444 U.S. 899 (1979).  However, legal conclusions or unwarranted factual inferences need not be accepted as true.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

Both the first and second amended complaints allege the following facts.  Each of the plaintiffs is the owner of a skilled nursing facility.  On January 28, 1994, each plaintiff entered into a mortgage loan agreement secured by a collateral deed of trust and security agreement. On November 23, 1994, the mortgage loan agreements were assigned to Nomura Asset Capital Corporation ("Nomura").  Nomura then included the four mortgage loans as part of the Trust, a pass-through, commercial, mortgage-backed security.[4]

In December 1994, Nomura assigned all of its right, title and interest in the mortgage

---

[4] The second amended complaint alleges that "[a] commercial mortgage-backed security represents an investment in commercial mortgage loans, whereby the investor owns an interest in a pool of commercial mortgages, which serve as the underlying assets and source of funds for the security." (Second Am. Compl. ¶ 28.)  The pass-through certificates represent the ownership interests of the investors in the Trust. Id. ¶ 29.

loan agreements to LaSalle, as Trustee for the Trust. The defendants then entered into agreements under which, on behalf of the Trust, Midland and CMSLP became the master servicer and the special servicer, respectively, of the loans. By letter agreements dated May 29, 2002 and executed by the plaintiffs and CMSLP, the maturity date for each loan was extended to October 1, 2002.

Plaintiffs negotiated with the defendants regarding refinancing of the loans up to and beyond the October 1, 2002 maturity date. Plaintiffs continued to make monthly principal and interest payments during this period of negotiation, and on February 24, 2003 a letter agreement was executed by plaintiffs and CMSLP, under which it was stipulated that the loan documents were to remain in full force and effect and that refinancing negotiations would continue. As of January 2004, the monthly loan statements plaintiffs received from Midland and CMSLP showed that no past due charges, including late charges, were due, owed or assessed.

The refinancing negotiations eventually were unsuccessful, and plaintiffs refinanced the loans through another institution. At the closing on the refinancing, CMSLP provided payoff statements for each loan that allegedly included a total of $497,928.78 in overcharges and errors, consisting of unsubstantiated and improper disposition fees, late fees, accrued interest, default interest and appraisal/legal costs, fees and expenses. Plaintiffs allege that the defendants refused to correct the overcharges and errors, so that plaintiffs were compelled to pay the charges in order to close on the refinancing.

The defendants move to dismiss the breach of contract claim against Midland and

5

CMSLP on the ground that no contracts exist between them and the plaintiffs. They contend that the Trust is the actual contracting party, so that a breach of contract claim may be brought only against LaSalle, in its capacity as Trustee. The defendants also move to dismiss plaintiffs' claim for unjust enrichment, however, as to all defendants, on the grounds that such a claim is not viable when a valid contract exists on the same subject matter. It is argued that, because plaintiffs have alleged the existence of a valid contract, the unjust enrichment claim fails to state a claim upon which relief may be granted.

Plaintiffs have alleged that LaSalle, Midland and CMSLP entered into servicing agreements for the loans in question. (Second Am. Compl. ¶ 34.) In response to the motion to dismiss, plaintiffs argue that discovery regarding these servicing agreements and the rights of Midland and CMSLP thereunder may show that the plaintiffs are third-party beneficiaries of the agreements. Thus, plaintiffs maintain that they have either a cause of action for breach of contract against Midland and CMSLP or a cause of action for unjust enrichment.

As stated above, a complaint should not be dismissed "because plaintiff misconceived the proper theory or claim if plaintiff is entitled to relief under any theory." Myers, 636 F.2d at 169. At this time, with regard to the claims for breach of contract and unjust enrichment, the Court cannot say that "no relief could be granted under any set of facts that could be proved consistent with [plaintiffs'] allegations" in the second amended complaint. Hishon, 467 U.S. at 73.

The plaintiffs have also asserted a cause of action under the civil RICO statute, 18

6

U.S.C. § 1964(c),[5] alleging violations of § 1962(a)-(d).[6] Defendants contend that plaintiffs have failed to plead sufficient facts to support a RICO claim. The Court disagrees. While the RICO allegations are not extensively detailed, the Court finds that the facts pleaded in the second amended complaint are sufficient to withstand a motion to dismiss.

The allegations of the first amended complaint, as modified by the second amended complaint, state a claim upon which relief may be granted. Therefore, the defendants' motion to dismiss the first amended complaint is DENIED.

The defendants also move to strike plaintiffs' demand for a jury trial. The motion is based on the contractual waiver of a jury trial contained in each of the four Loan Agreements. Plaintiffs argue that the Seventh Amendment requires a jury trial on demand in civil RICO cases, citing NSC Int'l Corp. v. Ryan, 531 F. Supp. 362 (N.D. Ill. 1981) and In re Southern Indus. Banking Corp., 67 B.R. 399, 403 n.2 (Bankr. E.D. Tenn. 1986). Nevertheless, a jury trial may be contractually waived, as long as that waiver is knowing and

---

[5] 18 U.S.C. § 1964(c) provides: Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

[6] Section 1962, setting forth the acts prohibited by the statute, provides:
  (a)  It shall be unlawful for any person who has received any income derived . . . through the collection of an unlawful debt . . . to use or invest . . . any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, interstate or foreign commerce. . . .
  (b)  It shall be unlawful for any person . . . through collection of an unlawful debt to acquire or maintain . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate of foreign commerce.
  (c)  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of the enterprise's affairs through . . . collection of an unlawful debt.
  (d)  It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

voluntary.  See K.M.C., Inc. v. Irving Trust Co., 757 F.2d 752, 755-757 (6th Cir. 1985).

The waiver provision contained in the Loan Agreements states that the borrower waives a trial by jury on any claim or cause of action "arising out of or in any way related to this agreement or the loan."  Loan Agreements, Art. VII, ¶ 7.13.  (Defs.' Mot. to Strike, Ex. A.)  The provision also states that a jury trial is waived on any claim or cause of action:

> in any way connected with or pertaining or related to or incidental to any dealings of lender and/or borrower with respect to the loan documents or in connection with this agreement or the exercise of either party's rights and remedies under this agreement or otherwise, or the conduct or the relationship of the parties hereto, in all of the foregoing cases whether now existing or hereafter arising and whether sounding in contract, tort or otherwise. . . .

Id.  This provision is extremely broad and applies to all of the claims asserted in the second amended complaint.  See Efficient Solutions, Inc. v. Meiners' Country Mart, Inc., 56 F. Supp. 2d 982, 983-84 (W.D. Tenn. 1999) (holding a jury waiver clause applied to tort claims that arose out of and related to the contract).

Plaintiffs also contend, however, that the waivers in this case may not apply to their claims against Midland and CMSLP because those defendants maintain that they are not parties to the loan agreements.  Thus, absent discovery regarding the exact contractual relationships for servicing the loans, it cannot be determined at this time whether plaintiffs are entitled to a jury trial on the non-breach of contract claims against Midland and CMSLP.

Lastly, plaintiffs contend that the waivers of their right to a jury trial were not knowing and voluntary. Consideration of the validity of the waiver will require examination of the facts and circumstances surrounding the execution of the agreements.  As no discovery

8

has been conducted, the parties have had insufficient opportunity to gather evidence on that issue. Therefore, a ruling on the motion to strike plaintiffs' jury demand would be premature at this time.

The motion to strike plaintiffs' jury demand is DENIED without prejudice to refiling after sufficient discovery is conducted.

In conclusion, the defendants' Motion to Dismiss Complaint and Motion to Strike Plaintiffs' Jury Trial Demand (dkt. #4) and the defendants' Motion to Dismiss First Amended Complaint and Motion to Strike Plaintiffs' Jury Trial Demand (dkt. #17) are both DENIED. Plaintiff has also filed a Motion for Scheduling Conference (dkt. #24). That motion is GRANTED. The Clerk is directed set this case for a scheduling conference as soon as it is practicable to do so.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE